WINSTON and FENWICK *vs.* RIVES.

1. Sureties to a writ of error bond, executed on removing a case from one Court to another, are discharged by the execution of a new writ of error bond, by new sureties, taking the case from the latter into a higher tribunal.
2. Thus, where a cause was removed by writ of error, from the County to the Circuit Court, and there affirmed, and subsequently, by writ of error, was taken to the Supreme Court—it was held, that the execution of a writ of error bond, in the latter case, operated as a discharge of the sureties in the former bond.

This case was removed by a writ of error from the County Court of Madison, and was the judgment of that Court, against the plaintiffs, as sureties to a writ of error bond, executed on taking a certain cause from thence into the Circuit Court.

The cause was commenced by a *scire facias*, which recited, that at the July term, 1821, of a County Court, held in, and for the County of Madison, one Francis E. Rives, recovered judgment at law, against Irby Jones, Walter Otey, Frederick Jones, Edwin Jones, and William Lewis, for the sum of two thousand nine hundred and fifteen dollars and sixty-six cents, debt; and one hundred and seventy-five dollars and ninety three cents damages, besides costs : and that aftewards, to wit, on the twelfth day of January, 1822, the said Walter Otey, and William Lewis, obtained a writ of error, returnable to the then ensuing term of the Circuit Court of said County; and entered into bond, with Joseph Fenwick, Joseph Clay, and John J. Winston, sureties—conditioned, that if said judgment of the County Court, should be affirmed in the Circuit Court, then they should

pay and satisfy the said judgment, damages, interest and costs. That, afterwards, to wit, at a term of the Circuit Court of Madison County, begun and held on the second Monday in February, 1823, it was then and there considered by the said Court, that the said judgment of the said County Court, should in all things be affirmed; and that the said Francis E. Rives, recover against the said Irby Jones, Walter Otey, Frederick Jones, Edwin Jones and William Lewis, the amount of the judgment rendered aforesaid: and because it appeared to the said County Court, that although the judgment had been in all things affirmed, yet the said Irby Jones, Walter Otey, Frederick Jones, Edwin Jones and William Lewis, had not, either of them, nor the said Joseph Fenwick, Joseph Clay and John J. Winston, sureties, paid and satisfied the said judgment, &c. according to the condition of their bond. Therefore, the sheriff was commanded by good and lawful men, &c. to make known to the said Joseph Fenwick, Joseph Clay and John J. Winston, sureties of the said Walter Otey and William Lewis, as aforesaid, that they be and appear before the judge of the County Court of Madison, at February term, then next, to shew cause why judgment should not be rendered against them, for the debt, damages, interest, &c., of the said judgment, affirmed as aforesaid, in the Circuit Court, &c.

This *scire facias* was returned, executed on Winston, and *non est*, as to Clay and Fenwick.

At September term, 1826, Winston appeared, and plead to the *scire facias*,

*First—nul tiel record.*

*Secondly*—that theretofore, to wit, on the 25th day of July, 1823, the aforesaid Walter Otey had prayed

and obtained a writ of error, returnable to the then ensuing term of the Supreme Court of the State, removing to that Court, the judgment of the aforesaid Circuit Court, in said *scire faɔias* mentioned; and on that day, before the proper officer of said Circuit Court, the said Walter Otey, with William Saunders and Joseph Fenwick, his sureties, entered into the usual bond in such case required, with condition that said Walter Otey should prosecute, with effect, said writ of error; or on failure, pay and satisfy the debt, &c., according to the judgment which might be had in said Supreme Court: and that afterwards, to wit, at the July term, 1826, of the said Supreme Court, the death of said Walter Otey, having been suggested, and the said cause revived in the names of his administrators----it was considered by the said Supreme Court, that the judgment of the said Circuit Court should be in all things affirmed; in that, the said Rives, should recover of the said administrators the debt, &c., adjudged by the said Circuit Court, to be levied, &c. : which said writ of error, last aforesaid, and the judgment and proceedings of said Supreme Court, remained in full force, and not vacated. And afterwards, to wit, on the 28th day of August, 1826, the said Rives, the plaintiff, caused to be issued, from the office of said County Court, a writ of *fieri facias* against the goods and chattels, &c. of the said Otey, in the hands of his representatives, for the debt, &c.—the return day of which said execution, as averred by the plea, had not then arrived, &c.

A third plea averred, that the said judgment, before the issuance of the said *scire facias*, was satisfied, paid and extinguished.

At February term, 1827, the cause was discontinued as to all the defendants, but Winston, and upon the plea of payment, a verdict was rendered, finding the sum of twelve hundred and twenty-nine dollars and sixty-three cents, due and owing upon the aforesaid judgment; and a judgment was rendered against Winston for that amount.

Upon this judgment, a new trial having been granted----afterwards, to wit, on the 15th day of December, 1827, a new *scire facias*, issued against Fenwick, Clay, and Winston, which was executed upon Winston and Fenwick. These defendants having demurred, and the demurrer being overruled, they plead over----

1st. *Nul tiel record.*

2dly. Payment and satisfaction of the said judgment.

3dly. That on the — day of ——, the said Rives had sued out of the Circuit Court of Madison, a writ of *scire facias* against William Saunders, and the said Fenwick, the defendant, wherein it was alleged, that the identical judgment named and described in the said *scire facias*, was removed by writ of error into the said Circuit Court, and there affirmed; and that the said William Otey subsequently removed the said cause, by writ of error, into the Supreme Court of the State, and that the said Saunders and Fenwick became the sureties of said Otey, to the writ of error bond; that said judgment of the said Circuit Court being affirmed by the said Supreme Court; the said Rives sought satisfaction thereof in said Circuit Court, by execution against the said Saunders and Fenwick, of the identical debt, &c.—and that the said *scire facias* was still pending

and undetermined; and to which the said Saunders and Fenwick had pleaded, &c.

And for further plea they alleged, that they signed their names at the bottom of a blank leaf of paper, with a view to become bound as sureties of the said Otey and Lewis, for the prosecution of a writ of error, but no such bond, or condition, as alleged, was signed by, or shown to them, &c.

Issues were then had to the first and second pleas; and demurrers filed to the third and fourth pleas.

And then afterwards, to wit, at February term, 1829, came the parties, and the demurrers to the third and fourth pleas, being sustained—a jury came, who rendered a verdict upon the plea of payment, in favor of the plaintiff.

At August term, 1829, a second new trial having been granted, a verdict was had for the plaintiff, and judgment thereon rendered against Winston and Fenwick, for the sum of three thousand one hundred and six dollars and twenty-one cents, from which they took a writ of error, to this Court.

A voluminous bill of exceptions having been taken in reference to sundry opinions of the Court, as to points not noticed in the decision of this Court, the case was determined upon the question, whether the execution of the last writ of error bond, did not discharge the sureties in the first.

LIPSCOMB, C. J.—This cause came up on a writ of error, to the County Court of Madison.

The material facts are these—Rives, in 1821, recovered of Otey, Lewis and three others, above three thousand dollars, in the County Court of Madison

4 s & p.                          35

county. In January, 1822, Otey and Lewis obtained a writ of error, to carry the cause, for revision, into the Circuit Court, giving Winston and Fenwick, the present plaintiffs, as securities. In February, 1823, there was an affirmance, in the Circuit Court, of the judgment of the County Court. Between March and July, of the same year, Saunders, the deputy sheriff, to whom the execution, on the affirmance of the judgment, had been delivered, received from Otey, at different times, several sums of money, amounting to twenty-three hundred dollars, giving his receipts as deputy sheriff.

On the 25th July, 1823, Otey obtained a writ of error, to take the case into the Supreme Court; giving Fenwick and Saunders as his securities, to supercede the execution. Otey died pending the writ of error in the Supreme Court; and the cause was revived in the name of his administrators, and the judgment of the Circuit Court, affirming that of the County Court, affirmed. Otey's representatives paid about five hundred dollars, after the affirmance of the judgment, which seems to have been all that could be made out of his estate, as an execution sued out against his administrators was returned *no property.* The judgment now sought to be reversed, was rendered in the County Court of Madison, on a *scire facias* sued out on the writ of error bond, given by Winston and Fenwick, as securities of Otey, on taking the cause into the Circuit Court.

Winston and Fenwick plead to the *scire facias*—

1st. *Nul tiel record.*

2d. The second writ of error bond, and the proceedings had thereon.

3d. That they signed their names to a blank piece

of paper, and that the bond was afterwards written above their names.

4th. Payment.

On the first plea the plaintiff below took issue, which was adjudged by the Court in his favor.

To the second, he demurred, and the Court sustained his demurrer.

To the third plea, also, he demurred, and his demurrer was sustained.

On the fourth plea issue was joined, and tried by the county.

Several errors have been assigned, but the contest has mainly turned on two points—first, the effect of the second bond for the writ of error, to carry the cause into the Supreme Court.

And secondly, the charge of the Court below, on the trial of the plea of payment, to the jury.

If the objection taken by the plaintiff in error, on the first, is sustainable, it will dispose of the whole case.

In this State, there are so many appeal and writ of error bonds, appeals and writs of error being guarantied as a matter of right, that it is somewhat surprising, that the question has never before been raised. And it is to be inferred from the fact, that so little authority has been used by the learned counsel, in the argument, that it has not been often adjudicated, in our sister States.

The position assumed by the plaintiff's counsel, and to the sustaining of which, most of his argument, on this branch of the case, was addressed, is, that the obtaining indulgence, by the principal, without the consent or privity of the security, by operation of law, is as to its effects on the security, the

same as if the indulgence was matter of contract, between the creditor and the principal debtor. If this position is true, the solution will not be difficult, nor to be settled on the application of any new principle.

The doctrine, that a security is absolved from his obligation, by the creditor entering into a valid contract for further indulgence to the debtor, without the security's consent, has been so often recognized in this Court, as now to place its soundness beyond controversy. I confess, though, I have not been able to perceive, very clearly, the analogy, in principle, between such contract, for giving further time for payment, and obtaining that further time by operation of the law. Nor do I believe its existence very material, in making a final disposition of the cause; it is true, that if the analogy was clear, it would divest the case of all difficulty.

There is a principle that pervades the whole doctrine, on the relation subsisting between the creditor and a security debtor—that is, that the obligation shall by no liberal intendment, be carried, in the smallest degree, beyond the undertaking. And again, that there is no moral obligation on the security, beyond, or superadded to the legal obligation.— His obligation being essentially a legal one, it would follow, that if not liable in strict law, that he is not liable at all. So much for the nature of the relation between the creditor and the security.

It may not be unprofitable, now, to consider for a moment, the relations between the security, and his principal. And in what way these relations may be affected.

It is always presumed, that the security is indem-

WINSTON and FENWICK vs. RIVES.

nified, for his risk, by collateral security. And so universal was this, formerly, that a court of law would not sustain an action by the security against his principal, to recover the money that the security had been compelled to pay for his principal. When there was no counter bond, by the custom of London, the surety who had paid the debt, might maintain an action for money paid to the use of the principal, on the implied contract.[a] But the practice, though of comparatively modern origin, prevails universally, at present, wherever common law courts are open. A surety may, by application to a court of chancery, after the money is due, compel the principal to discharge it. And it was said by the Lord Keeper *North*, in *Ranalagh* vs. *Hayes*, that although the surety be not troubled or molested for a debt, yet at any time after the money becomes due and payable, on the original bond, the court of chancery will decree, the principal to discharge the debt; it being unreasonable that a man should always have such a cloud hanging over him.[b] The same doctrine is recognized in *Taylor* vs. *Heriot;*[c] and it was holden in *Tankersly* vs. *Anderson,*[d] that sureties have a right to enforce mortgages or other counter securities, given to indemnify them, as soon as they are endangered, and before they have actually paid the original debt.

The surety, when he pays the debt of his principal, has all the rights of the obligee conferred on him, and stands in the place of the original creditor.[e] Hence, if a judgment has been obtained against the principal and security, and the security pays the judgment, he is entitled to the privilege of using the judgment against his principal for his benefit.

[a] Fell on Guar. 234.

[b] Ib. 247.

[c] 4 Dess. 227.

[d] 4 Des. 44.

[e] Fell 249.

Let us apply these principles to the case under consideration. What was the extent of Winston and Fenwick's obligation to Rives? Their undertaking was, to render them liable to him on the happening of an event dependent on the action of the Circuit Court, and could not be dependent on an event still more remote, unless their case can be made an exception to the general rule. It would be a sufficient answer, if they were to rest on the contract, alone, and say our obligation runs no further, and we are not liable beyond the express terms of the obligation, by which we became bound. It may, however, readily be perceived why one would be surety on a writ of error bond to the Circuit Court, when he would be wholly unwilling to be bound to wait the result of a decision in the Supreme Court. After the affirmance of the judgment in the Circuit Court, had there been no error taken to the Supreme Court, the sureties might have paid the debt, and run an execution against their principal for their own indemnification. They were debarred from doing this by the *supersedeas* on their principal giving bond for the writ of error to the Supreme Court. To hold that their liability continued after such *supersedeas*, would be depriving them of the privilege of securing themselves, by paying and running the execution on the judgment, for their own benefit. And it would also be holding them liable, on a contingency to happen beyond their obligation. It may however be objected, by the defendant in error, that but for the interposition of the sureties, his judgment would have been satisfied, and that the execution would not have been stayed from and superseded by the first writ of error. But it may be answered, that

the law gave the right, and that the law works an in-jury to no one, and none can be said to be injured when his adversary only avails himself of the rights secured to him by law.  On the rendition of the judgment in the County Court, the law provided a remedy for the defendant, if he thought the law of his case had not been correctly adjudged.  And it was at the same time sufficiently mindful of the in-terest of the successful party.  It provided, that al-though the party dissatisfied with the judgment should have the correctness of that judgment revised in the Circuit Court, yet as a price and condition of that privilege, he should secure the plaintiff in the event of that judgment being affirmed.  The same privi-lege was guarantied to the party, if dissatisfied with the judgment of the Circuit Court, on his case, he could ask a revision in the Supreme Court, the Court of the last resort—but on the like condition of securing the plaintiff, by bond and surety, to abide and perform the judgment of the Supreme Court.

The writ of error bond, in every case, is taken and entered into, without the privity or consent of the party who is to be benefitted by it.  It is approv-ed by the clerk, without, inquiring tnto any thing but its sufficiency ; and, in discharging this duty, the clerk is performing rather a judicial, than a ministe-rial act.

It might, here, be asked, if the law held the secu-rity in the first bond still liable, after another writ of error sued out, why the necessity of creating addi-tional liens and embarrassment, on property, by re-quiring that bond and security should be given, on taking out such last writ of error, without making any reference to the first bond ?  It is not, certainly,

the policy of the law, to increase liabilities, and mul-tiply liens, for the payment of the same debt—and this would certainly have that tendency, if each set of securities were secured, as contemplated by law, against loss, in a collateral way, by their principal.

If the first sureties were to be held liable, there surely should not have been a *supersedeas*, after the affirmance of the judgment in the Circuit Court: and they should have been at liberty to use all the means that the Courts of law and equity can afford, to in-demnify themselves. It has, however, been said, that the liability of the securities became complete, on the affirmance of the judgment of the County Court, in the Circuit Court; and that this liability could not be removed, only by a reversal of the judg-ment.

Without at all admitting that the liability was complete, I think that it is not the only case, where the operation of the law can destroy and change a security, after it had been fully and completely ac-quired. The plaintiff, in an execution, acquires a lien on the personal property of his debtor, from the time the execution is placed in the sheriff's hands, and on real property, from the date of his judgment. We believe that it will not be denied, that this lien would be raised and discharged, by a writ of error and bond, approved as required by law.

This, too, would be the effect of an injunction bond, after levy made. The law, in making these changes of security, does not violate contracts; be-cause, it will be recollected, that none of these secu-rities are acquired by contract, but they are provided by the same system of laws, that may change them.

It seems to me, that the discharge of a levy, made

on property, by a subsequent writ of error bond, or a bond for an injunction, bears so striking an analogy to a subsequent writ of error bond, taking the cause to a higher tribunal, as to be decisive of the case before us, if there was not the authority of an adjudged case to be found. But the case of *Brooks & Brown* vs. *Shepherd*,[a] is fully in point.

In that case it was held, that the execution of a second replevy bond, released the security in the first bond. The force of this authority was attempted to be evaded, by supposing that the second bond had been given, before there was a forfeiture of the first, and that, thereby, it has been rendered impossible to perform the first.

If this had been the case, it would have still furnished an argument in favor of the present plaintiffs in error; because they were, in like manner, prevented from proceeding against their principal, by the second writ of error.

But, an examination of the case in Bibb, will show, that the second bond was not given until after there had been a forfeiture of the first bond; and an execution sued out on it, and levied on the property of the security: the case is therefore a strong one.

We are therefore of the opinion, that the security in the first writ of error bond, was discharged by the second bond being entered into. And that the judgment ought to have been for the defendants below, on the demurrer, as that demurrer brought the whole case before the Court.

As this point disposes of the case, we do not consider it important to say, what was the legal effect of the payments made to Saunders, to which the charge of the Court below referred.

The judgment must be reversed.